SCOTT, Plaintiff in error, v. STATE, Defendant in error.

*No. State 231. Argued May 8, 1974.—Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 350.)

---

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J.   Two issues are presented for review:

1.   Whether the trial court was without its authority in amending, sua sponte, the defendant's original sentence of an indeterminate term of imprisonment not to exceed five years, to be served consecutively to any previously imposed sentence, by increasing said term to seven and one-half years.

2.   Whether the trial court abused its discretion in improperly restricting the cross-examination of James Henderson Porter, the defendant's alleged accomplice.

*Increased sentence on resentencing.*

The defendant contends that the trial court, in amending his sentence, sua sponte, by increasing that sentence by two and one-half years, was acting without its authority and that the original sentence of an indeterminate term of not more than five years should be reinstated.

In sentencing the defendant, the court relied on the fact that Calvin Scott had no record prior to this incident [1] and that Mr. Scott has since effectively engaged in a rehabilitative program and sentenced the defendant to a term one half that previously imposed upon his alleged accomplice (ten years).

"Our conclusion on those factors results in the following disposition: It is adjudged that the defendant is hereby committed to the Wisconsin State Prison for an indeterminant term of not more than 5 years. Waupun State Prison at Waupun, Wisconsin is designated as the reception center to which the defendant shall be delivered by the Sheriff. This sentence shall run consecutively to any other sentence being served by the defendant."

However, at 8:20 a. m. on May 18, 1973, the court, sua sponte, ordered a further hearing regarding the judgment and sentence in the present action. At 4:10 p. m. that same day said hearing was held—the defendant having spent the previous evening in the county jail. Therein the court remarked:

"When I was driving home last night, it became clear to me that I had not accomplished the goal that I set out to do in the sentencing of this matter. . . ."

and explained its objectives in sentencing the defendant.

"I tried to find some fairness in treating the two people involved in the situation the same. . . You were al-

---

[1] The defendant had since been convicted of injury by conduct regardless of life in violation of sec. 940.23, Stats., and sentenced to an indeterminate term of not more than five years for shooting his alleged accomplice, James Henderson Porter, in the leg.

ready in jail for another matter for five years. The other gentleman received ten years for his offense. . . .

". . . [M]y intent at the time was a sentence of seven and one-half years, because if I sentenced you to seven and one-half years, I was doing two very important things, I thought, but I didn't communicate them to you.

"I was giving you less than what Mr. Porter got for the same offense, and there were reasons for that, and those reasons were in your favor on the same side. If I gave you just five years, you would be receiving a ten year sentence the same as Mr. Porter. But Mr. Porter was receiving ten years for one offense, and you were serving ten years for two offenses. That was not fair to the community.

"So my notes indicated that you should be sentenced to seven and one-half years for this offense, for the March 6, 1969 robbery. And that was my intent yesterday and always has been."

In the present case the defendant had yet to commence to serve his sentence; therefore, no constitutional infirmity arises from increasing the term of said sentence prior to execution thereof. Jeopardy in a constitutional sense has not attached and said sentence could be increased. *See Ex Parte Lange* (1874), 85 U. S. (18 Wall.) 163, 21 L. Ed. 872; *Chandler v. United States* (5th Cir. 1972), 468 Fed. 2d 834.

In *State v. Leonard* (1968), 39 Wis. 2d 461, 473, 159 N. W. 2d 577, this court adopted the following rule:

"Hereafter, on resentencing following a second conviction after retrial, or mere resentencing, the trial court shall be barred from imposing an increased sentence unless (1) events occur or come to the sentencing court's attention subsequent to the first imposition of sentence which warrant an increased penalty; and (2) the court affirmatively states its grounds in the record for increasing the sentence."

The standard set forth in *Leonard* has been affirmed recently by this court. In *Denny v. State* (1970), 47 Wis.

2d 541, 544, 178 N. W. 2d 38, the court further defined the rule as follows:

"A trial judge is not free to re-evaluate the first sentence; he is in effect bound by the maximum of the previous sentence unless new factors or newly known factors justify a more severe sentence."

In *State v. Foellmi* (1973), 57 Wis. 2d 572, 205 N. W. 2d 144, this court at page 582 stated:

"A trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention."

Logic dictates that if a court is precluded from reducing a sentence after some later reflection, it should also be precluded from increasing a sentence for the same reasons. It would create a double standard to not allow such a reduction and to permit the increase.

In *Chandler v. United States, supra,* the situation was almost identical to the case at bar. Therein the court indicated that it had unintentionally transposed the terms as to different counts while sentencing. On appeal the court dismissed such contention stating:

". . . [T]he Government argues that an exception should be recognized in cases such as this where the alteration of the sentence was undertaken solely to conform to the original intention of the trial judge and the error in the original sentence was due solely to an inadvertent transposition of the numbers. Were we clairvoyant and able to say for certain in every case what the trial judge really 'intended,' this argument might be persuasive. Being mere mortals however, we must refrain from such delicate undertakings, and we refuse to sanction a procedure that encourages such an inquiry." *Id.* at page 836.

A review of the record in the instant case shows that the decision to increase the sentence was based solely on "reflection." Here the court amended the sentence so as

to conform the sentence to its unspoken intent. This in our opinion does not constitute a new factor upon which a trial court may increase a defendant's sentence. In the absence of "new factors," the trial court's amended sentence of seven and one-half years must be reversed and the original sentence of five years reinstated.

*Limitation of cross-examination.*

The defendant contends that the trial court improperly restricted the cross-examination of James Henderson Porter, the defendant's alleged accomplice, such that the defendant was unable to attack the witness' credibility and show the witness' bias toward the defendant.

The general rule of evidence [2] is that a witness may be examined and his credibility attacked by evidence of prior convictions of criminal offenses. Such examination is, however, limited to questioning as to whether the witness has been convicted of a crime and the number of times. *Nicholas v. State* (1971), 49 Wis. 2d 683, 688, 183 N. W. 2d 11.

"It is then the law in this state, statutorily established, that on an issue of credibility, a witness who takes the stand may be questioned as to prior convictions of criminal offenses. Two questions may be asked: (1) Have you ever been convicted of a criminal offense?; and (2) How many times? Given responsive and accurate responses to these two questions, no further questions may be asked." *Underwood v. Strasser* (1970), 48 Wis. 2d 568, 570, 571, 180 N. W. 2d 631.

The defendant contends that although the above described rule of evidence is correct, that the trial court erred in restricting cross-examination of the witness as to the circumstances of those convictions in that such evidence would tend to show bias on the part of the witness toward the defendant. Such evidence he contends

---

[2] The Wisconsin Rules of Evidence, sec. 906.09, Stats., did not become effective until January 1, 1974.

would be admissible under the multiple-admissibility rule of *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

The trial court, in conference, was informed concerning the lengthy criminal record of the witness Porter. The record consisted of 13 offenses including five charges of armed robbery. Counsel for the defense and the district attorney engaged in a lengthy discussion as to the admissibility of the nature of the criminal convictions. The trial court thereafter exercised its discretion and determined that it would limit cross-examination to the March 6, 1969, armed robbery which the witness alleged that the defendant participated in and a February, 1971, shooting incident. The shooting incident of which the defendant was convicted involved the witness. On that occasion the defendant, Calvin Scott, shot the witness, James Henderson Porter, in the leg because of an argument involving the fruits of their criminal activity. We think the court's ruling was correct. Only those two incidents would be at all relevant to show the bias, if any, the witness felt for the defendant.

The defendant contends additionally that evidence concerning the prior crimes would be admissible so as to impeach the testimony of Porter to the effect that Scott planned the armed robbery. Since the witness had been convicted of numerous other armed robberies, he contends, then he must have planned this one also. Evidence concerning the issue of who planned the robbery is of limited probative value. The issue at bar was whether the defendant participated in the armed robbery. Defendant's participation was sufficiently proven by numerous witnesses and testimony of Porter in that regard would be merely cumulative. Evidence as to the planning of the robbery was collateral and impeachment thereon impermissible.

We conclude that the trial court exceeded its authority in increasing defendant's sentence from five years to

seven and one-half years. With respect to the defendant's past motions, the order denying the motion for a new trial is affirmed and the order denying the motion to amend sentence is reversed. The original sentence of not more than five years to run consecutively to any other sentence being served by the defendant is ordered reinstated.

*By the Court.*—The order denying the motion for a new trial is affirmed. The sentence is vacated and cause remanded for resentencing in a manner consistent with this opinion.