STATE of Wisconsin, Plaintiff-Appellant,

v.

Michael A. GRINDEMANN, Defendant-Respondent.†

Court of Appeals

*No. 01–0542–CR. Submitted on briefs December 7, 2001.—Decided April 18, 2002.*

**2002 WI App 106**

(Also reported in 648 N.W.2d 507.)

† Petition to review denied 9-26-02.

■■■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■
■■■■■■■■■

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Christian R. Larsen*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Leonard D. Kachinsky* of *Kachinsky & Petit Law Offices*, Neenah.

Before Dykman, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. The State of Wisconsin appeals an order which modified Michael Grindemann's forty-four-year sentence to "time served" and placed him on probation. The State contends that Grindemann failed to present a "new factor" that would warrant a reduction of his sentence, and that the trial court erred in concluding the State had breached the "spirit" of its plea agreement with Grindemann. The State also asserts that the court did not erroneously exercise its discretion when it originally imposed Grindemann's sentence, but that it did so in deciding to modify the sentence.

¶ 2. We first conclude that it was improper for the court to grant Grindemann's motion without first re-

questing a response from the State or conducting a hearing on the motion. We also agree with the State that the trial court's altered view of certain evidence presented at Grindemann's original sentencing hearing is not a "new factor," and we conclude that Grindemann's assertion of a breach of the plea agreement comes too late. Finally, we conclude that the record discloses no erroneous exercise of discretion by the court when it originally imposed sentence, and further, that the originally imposed sentence was not unduly harsh or unconscionable. Accordingly, we reverse the appealed order.

## BACKGROUND

¶ 3. Grindemann pled guilty to eleven counts of second-degree sexual assault. The court sentenced him to eleven consecutive four-year prison terms. The offenses to which Grindemann pled were consolidated from three counties, and they involved sexual contact or intercourse with boys between the ages of twelve and sixteen years. Pursuant to a plea agreement, seven additional counts were dismissed but read in at sentencing.

¶ 4. Grindemann testified at the sentencing hearing that he had been "a victim of homosexual contact by another when [he was] a child." This had occurred when Grindemann was ten or eleven, and it involved sexual contacts initiated by an older classmate with whom, according to Grindemann's testimony, "a homosexual relationship developed." Grindemann further explained that at the time of these sexual experiences he "was a youngster that was eager to learn what [the older boy] had to teach." The fact of this early homosexual activity was also discussed in psychiatric and psychological reports that were provided to the court at sentencing.

During argument, Grindemann's counsel labeled the events "an early traumatic experience" in Grindemann's life.

¶ 5. In addition to dismissing and reading in seven other counts for consideration at sentencing, the State had agreed to recommend "30 years or less" of imprisonment. The State did in fact recommend a sentence totaling thirty years. During the prosecutor's sentencing argument, however, he said that the offenses before the court were potentially "the tip of the iceberg," noting that at least with respect to the Waushara County charges, only one count per victim was charged and that "there are many other incidents that occurred in Waushara County involving the same boys." Defense counsel objected to the comment, claiming there was "not evidence . . . properly before the court" for the prosecutor's assertion. The court sustained the objection and admonished the prosecutor to "[b]e more cautious" in his comments.

¶ 6. Defense counsel's recommendation at sentencing, supported by a defense psychiatrist and several character witnesses, was for concurrent four-year sentences on each of eight counts, together with a consecutive ten-year term of probation on the remaining counts. The author of the pre-sentence investigation recommended a prison term of twelve to fifteen years.

¶ 7. In imposing sentence, the court expressly considered Grindemann's character, the gravity of his offenses and the need for protection of the public. The court indicated its awareness that Grindemann had no prior criminal offenses of any kind; that he was a college graduate, a teacher and married; and that he had the support of his family as well as numerous persons in the community. With respect to Grindemann's childhood sexual experience, the court

638

said that "sexual deviancy on your part commenced when you are ten or eleven years old." The court also noted that despite Grindemann's "good traits," he was apparently unable to "distinguish between harmless adult-child communication and association and seriousness of sexual involvement" with the teenage boys. The court expressed its concern over Grindemann's partial rationalization of his actions as providing sex education to the victims, as opposed to seeking his own sexual gratification.

¶ 8. With respect to the offenses, the court noted that there were at least seven victims, and that the conduct had occurred over a period of almost two years. The court also noted that the legislature had provided a maximum penalty of ten years for each count, and thus Grindemann faced a potential 110 years of imprisonment. The court acknowledged that the offenses did not involve violence, force or threats to the victims, but stated that, in its opinion, "the crime of sexual assault of a male or female child is one of [the] most reprehensible acts an adult can commit," and that the conduct was "an aggravated situation, because of the repetition of these acts."

¶ 9. The court imposed eleven consecutive four-year terms and entered a judgment of conviction on July 31, 1985. Grindemann filed a motion for sentence reduction the following January. At the hearing on this motion, Grindemann's postconviction counsel argued that the original sentence was excessive, noting that Grindemann's parole eligibility on the sentence would be similar to that of a person convicted of first-degree murder. He also compared the forty-four-year sentence to the maximum of forty years which could have been imposed at the time for a person who committed two second-degree homicides. Grindemann specifically re-

quested a reduction to what was recommended by the pre-sentence investigation author, twelve to fifteen years in prison, or a term between that recommendation and the State's request for a thirty-year prison sentence. The State opposed the motion.

¶ 10. In ruling on the motion, the court noted that although it could reduce the sentence if it concluded its original sentence was unduly harsh or unconscionable, "I have difficulty finding viable reasons that I can cite on the record as to why the sentence should be reduced." The court said that it had given the matter "a tremendous amount of thought at the time I imposed sentence," and that it could have imposed consecutive sentences of ten years each, instead of four years each. The court also pointed out that there had been "no testimony at this hearing to suggest that the conscience of the public has been shocked by this sentence . . . or the judgment of reasonable people have been violated." Accordingly, the court denied the motion.

¶ 11. Grindemann, represented by a different attorney, filed a second "motion to modify sentence" in January 1990. In support of this motion, Grindemann's counsel asserted that a change in certain executive clemency procedures constituted a "new factor." At the hearing on the motion, Grindemann's counsel said that he did "not feel the court did not act within its discretion" in imposing the original sentence. Counsel also acknowledged that the court "could have sentenced him to ten years on each of the counts, and sentenced him to 110 years, and frankly, Your Honor, I don't think any appellate court would have overturned that decision." Because the "Clemency Board" had recently changed its procedures so as not to entertain requests for sentence commutation until parole eligibility had been attained, Grindemann's counsel requested the court to modify

the sentence so as to permit an immediate clemency filing. Specifically, Grindemann sought a reduction to three years on each count, which would produce parole eligibility in "eight plus years as opposed to eleven years."

¶ 12. The State again opposed any modification of Grindemann's sentence, arguing that the change in clemency procedures was not a "new factor" under controlling case law, given that the court had not considered or relied upon executive clemency procedures at the time of sentencing. The court agreed and denied Grindemann's motion. In doing so, the court cited case law holding that a change in parole policy was not a new factor. It concluded that, by analogy, a change in clemency procedure was also not a new factor, stating "at the time that Mr. Grindemann was sentenced, I honestly didn't even think about Executive Clemency."

¶ 13. Grindemann filed a third sentence modification motion on May 11, 1994. The circuit court, however, denied the motion without a hearing, stating in a letter to Grindemann's counsel "it appears to me that the averments made fail to state a claim upon which the relief sought may be allowed. Accordingly, I see little reason to allow time on the court calendar for same."[1] .

¶ 14. Grindemann again filed a motion to modify his sentence on December 28, 1999. This fourth motion, filed pro se, was grounded on: (1) an alleged new factor; (2) the State's alleged breach of the "spirit of the plea agreement"; (3) the sentencing court's failure to properly exercise its discretion; and (4) an assertion

---

[1] The original sentencing judge, Robert F. Curtin, denied Grindemann's first two sentence modification motions. Judge Curtin retired from the circuit court in 1993. Grindemann's 1994 motion was denied by Waushara County Circuit Court Judge Lewis Murach.

that the sentence imposed was unduly harsh. Grindemann requested that his sentence be modified to a "30–year prison term, per the plea agreement," or to "time served followed by long-term probation."

¶ 15. The court did not direct or request the State to respond to Grindemann's fourth motion, and it did not conduct a hearing on it.[2] In a written decision and order granting the motion, the court "concede[d] that at the time of sentencing, it thought of the Defendant as being a willing participant in aberrant conduct, rather than a victim of sexual abuse." The court next indicated that it had reviewed the sentencing transcript, and it agreed with Grindemann that the State had "breached the spirit of the plea agreement." Finally, the court stated that, in reviewing the original sentencing transcript, it "must concede that it did not state any specific reasons for the imposition of a sentence substantially in excess of the plea agreement."

¶ 16. The court summarized its conclusions as follows:

> Based upon its conclusion that possibly a "new factor" existed, that the District Attorney breached the "spirit of the plea agreement" and that without a doubt the Court did not state any specific reasons for the imposition of a sentence substantially in excess of the plea agreement[,] the Court will grant the Defendant[']s Motion to Modify Sentence.

The court cited *Cresci v. State*, 89 Wis. 2d 495, 504, 278

---

[2] The director of state courts issued a "judicial assignment order," filed February 8, 2000, which assigned Judge Curtin, now a reserve judge, to act on Grindemann's most recent motion, citing as a reason for the assignment "expedite litigation." (See footnote 1.) The next item which appears in the record is the appealed order, entered on January 17, 2001.

N.W.2d 580 (1979), for the proposition that, although a trial court may not revise a sentence "merely upon 'reflection,' " a court may review a sentence it has imposed for abuse of discretion and conclude that the original sentence was "unduly harsh or unconscionable." The court ordered Grindemann's sentence modified as follows: "[T]he sentence of four years on each of the counts of the information, namely counts 1 through 11 to be served consecutively will be reduced to a sentence of time served followed by a probationary period of five (5) years." The court also ordered as a condition of probation that Grindemann enter and complete a residential sexual offender treatment program, and that he comply with such other "usual and customary conditions of probation" as the Department of Corrections might impose.

¶ 17. The State appeals the order modifying Grindemann's sentence.[3]

## ANALYSIS

¶ 18. We conclude at the outset that, regardless of how we might resolve the State's claims of substantive error, the appealed order must be reversed on procedural grounds. Although it is not clear from the record when or if Grindemann served the State with a copy of his motion, there is no dispute that the court never requested the State to respond to it, nor did it conduct a hearing on the motion. The State noted at the hearing on its motion to stay the appealed order that "[t]his was a pro se motion that was filed . . . in the wake of a series

---

[3] The State immediately sought a stay of the order pending this appeal. The chief judge issued a judicial assignment order returning the case to Circuit Court Judge Murach, who granted the State's motion to stay the order. (See footnotes 1 and 2.)

of prior rulings . . . [where] there had either been a hearing or where there had been an outright denial of the defendant's motion." The district attorney then argued "that the State is entitled to assume that before anything substantively happens, [it] will at least be provided the courtesy of having notification of that fact via hearing or invitation to comment." We agree.

¶ 19. The trial court should not have granted Grindemann's motion for sentence modification without either requesting a response from the State or conducting a hearing on the motion. The parties agree that, for the most part, Grindemann's motion does not come within the provisions of WIS. STAT. § 974.06 (1999–2000).[4] We nonetheless conclude, pursuant to our authority under WIS. STAT. § 752.02, that a circuit court should proceed in a fashion similar to that outlined in WIS. STAT. § 974.06(3) when it receives a motion requesting sentence modification. Under that subsec-

---

[4] In discussing why the rationale of the "successive motion" bar under WIS. STAT. § 974.06(4) and *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994), should apply to Grindemann's motion, the State acknowledges that, insofar as it alleges a new factor or challenges the court's exercise of sentencing discretion, Grindemann's motion is not subject to § 974.06. *See Smith v. State*, 85 Wis. 2d 650, 661, 271 N.W.2d 20 (1978); *State v. Coolidge*, 173 Wis. 2d 783, 788, 496 N.W.2d 701 (Ct. App. 1993). Grindemann's assertion that the prosecutor's sentencing argument breached the plea agreement, however, raises a constitutional due process claim which would come within § 974.06(1). *See State v. Wills*, 187 Wis. 2d 529, 536–37, 523 N.W.2d 569 (Ct. App. 1994). Because we conclude the appealed order must be set aside on procedural and substantive grounds, we do not address the State's "successive motion" arguments. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

tion, a court may proceed in one of two ways to dispose of a postconviction motion: it may either deny the motion if "the motion and the files and records of the action conclusively show that the person is entitled to no relief"; or, the court shall "[c]ause a copy of the notice to be served upon the district attorney who shall file a written response within the time prescribed by the court" and "[g]rant a prompt hearing." Section 974.06(3). Because the court omitted these steps and summarily granted Grindemann's motion, we reverse the appealed order.[5]

---

[5] The State argues in its opening brief that the court erred procedurally "because it did not provide for input from victims of Grindemann's crimes before granting a reduction in his sentence to time served." The State concedes in its reply brief, however, that a failure to conform to provisions of WIS. STAT. ch. 950 is not grounds for an appeal of a sentence. *See* WIS. STAT. § 950.10(2).

We also note that the appealed order may be subject to reversal because it arguably imposes an illegal sentence. Under WIS. STAT. § 973.09(1), a court "may withhold sentence or impose sentence . . . and stay its execution, and in either case place the person on probation to the [D]epartment [of Corrections] for a stated period, stating in the order the reasons therefor." Here, however, the court ordered that each of the eleven four-year sentences it had previously imposed was modified to "time served." The court's order could be interpreted to mean that Grindemann had completed his sentence and was entitled to an immediate discharge. The five-year term of probation the court imposed would thus not relate to any stayed or withheld sentence. Because the State does not make this argument, however, we do not address it further, nor do we rest our disposition in whole or in part on the possible illegality of the modified sentence.

¶ 20. We next consider whether we must remand for further proceedings on Grindemann's motion, or whether, on the record before us, Grindemann is not entitled as a matter of law to the relief he seeks. We conclude that the latter is the case, and accordingly, our reversal of the appealed order terminates proceedings on Grindemann's motion. That is, we conclude that Grindemann has not identified a "new factor" entitling him to a sentence modification, and that he failed to timely raise his claim that the State breached the plea agreement. Moreover, we conclude that the court did not erroneously exercise its discretion when it originally imposed sentence and twice declined to modify it, and that the original sentence is not "unduly harsh and unconscionable." We address each of these issues in turn.

■■■■■

¶ 21. A circuit court has the "inherent power" to modify a previously imposed sentence after the sentence has commenced, *State v. Wuensch*, 69 Wis. 2d 467, 472–73, 230 N.W.2d 665 (1975), but it may not reduce a sentence merely upon "reflection" or second thoughts. *Id.* at 480; *Scott v. State*, 64 Wis. 2d 54, 59, 218 N.W.2d 350 (1974). A court may do so, however, on the basis of "new factors," *Wuensch*, 69 Wis. 2d at 479, or when it concludes its original sentence was "unduly harsh or unconscionable":

> While the trial court may not revise a sentence merely upon "reflection," . . . it may review its sentence for abuse of discretion based upon its conclusion that the sentence was unduly harsh or unconscionable. If the sentence is to be reduced upon those grounds, the trial court should set forth its reasons why it concludes the sentence originally imposed was unduly harsh or unconscionable.

*Cresci,* 89 Wis. 2d at 504 (citations omitted).

██

¶ 22. A new factor is a fact or set of facts highly relevant to the sentence determination, that was not known to the trial judge at the time of original sentencing because it was not then in existence or was "unknowingly overlooked" by all parties. *State v. Rosado,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). The defendant must establish the existence of a new factor by clear and convincing evidence. *State v. Franklin,* 148 Wis. 2d 1, 9, 434 N.W.2d 609 (1989). Whether a fact or set of facts constitutes a new factor is a question of law that we review without deference to the trial court. *State v. Kluck,* 210 Wis. 2d 1, 6, 563 N.W.2d 468 (1997) (citing *Franklin,* 148 Wis. 2d at 8).

¶ 23. Grindemann articulates the "new factor" which he contends justifies the court's reduction of his sentence as follows. He claims he did not "fully appreciate until after he received therapy in prison" that, as a child, he had been "a victim of sexual exploitation by an older male and that his own behavior was a result of that exploitation." When he presented this newfound realization to the court in his fourth motion for sentence modification, the sentencing judge "recognized in the face of new evidence that Grindemann's past sexual history with an older male was a mitigating factor rather than an aggravating one."

██

¶ 24. We reject Grindemann's assertion that a court's altered view of facts known to the court at sentencing, or a reweighing of their significance, constitutes a new factor for sentencing purposes. Rather, we conclude that this is a classic example of the "mere reflection" or "second thoughts" which cannot form the basis for a sentence reduction. *See State v. Foellmi,* 57

647

Wis. 2d 572, 582, 205 N.W.2d 144 (1973), *overruled on other grounds by Korpela v. State*, 63 Wis. 2d 697, 218 N.W.2d 368 (1974).

¶ 25. Simply put, Grindemann has not pointed to any "fact or set of facts" that was not known to the court at the time of his sentencing. The sexual activity initiated by an older boy when Grindemann was ten or eleven years old was described to the court at sentencing by Grindemann himself, and it was noted in the defense psychiatrist's report and the pre-sentence investigation. Just as a new expert opinion based on previously known or knowable facts is " 'nothing more than the newly discovered importance of existing evidence' . . . not newly discovered evidence for purposes of plea withdrawal,"[6] a court's recharacterization or reweighing of previously known facts is not a "new factor" for sentence modification purposes.

¶ 26. We also conclude the trial court erred in relying on its finding that the State had violated the "spirit" of the plea agreement by mentioning uncharged offenses during its sentencing argument. First, we are not persuaded that the prosecutor's comments violated the "spirit" of the plea agreement, given that there was no provision precluding reference to other offenses, and the agreement itself contemplated numerous read-ins of other offenses for sentencing purposes. And, even if the "spirit" of the agreement was violated, we cannot say that this constituted a " 'material and substantial breach of the agreement' " for which a defendant may obtain postconviction relief. *See, e.g., State v. Smith*, 207 Wis. 2d 258, 272, 558 N.W.2d 379 (1997) (citation omitted).

---

[6] *State v. Fosnow*, 2001 WI App 2, ¶ 25, 240 Wis. 2d 699, 624 N.W.2d 833 (citation omitted).

¶ 27. Most significantly, however, Grindemann's argument for a reduction of his sentence grounded on the State's purported breach of the plea agreement suffers from an additional and dispositive infirmity. "[T]he right to object to an alleged breach of a plea agreement is waived when the defendant fails to object and proceeds to sentencing after the basis for the claim of error is known to the defendant." *State v. Smith*, 153 Wis. 2d 739, 741, 451 N.W.2d 794 (Ct. App. 1989). Here, Grindemann did object to the prosecutor's mention of uncharged offenses at sentencing, but the objection was based on the lack of evidence "properly before the court," not on any claim that the State was violating either the terms or the "spirit" of the plea agreement. Moreover, the court sustained the objection and admonished the prosecutor to "[b]e more cautious" in his comments, suggesting that the court agreed with Grindemann's point that it should not consider any uncharged offenses for which no evidence was presented. Thus, even if prosecutorial silence regarding uncharged offenses was an implied provision of the parties' plea agreement, Grindemann obtained "specific performance" of that provision when the court sustained his objection.

¶ 28. In summary, we conclude that Grindemann is not entitled to have his sentence modified on the basis of a new factor or because the "spirit" of his plea agreement was breached. The trial court also expressed concern in its sentence modification order that, at the original sentencing hearing, it had not specified any "reasons for the imposition of a sentence substantially in excess of the plea agreement." But that explanation is not required of a sentencing court so long as it other-

wise explicates its rationale, based on permissible factors, for the sentence it imposes. *See State v. Johnson,* 158 Wis. 2d 458, 469, 463 N.W.2d 352 (Ct. App. 1990) ("[T]he court need not explain why its sentence differs from any particular recommendation," so long as proper sentencing discretion is exercised.).

¶ 29. The only remaining basis on which the trial court might have granted a sentence reduction is if it concluded that its original sentence was "unduly harsh or unconscionable." *State v. Ralph,* 156 Wis. 2d 433, 438, 456 N.W.2d 657 (Ct. App. 1990). The court did not state in its order that it so concluded, nor did it "set forth its reasons why it conclude[d] the sentence originally imposed was unduly harsh or unconscionable," which a court "must" do if it reduces a sentence on this basis. *Wuensch,* 69 Wis. 2d at 480. We will assume from the court's citation of *Ralph* and *Cresci,* however, that it did reach that conclusion. Accordingly, our final inquiry becomes whether a determination that the court's original sentence was unduly harsh or unconscionable would be sustainable on appeal, based on the record in this case. We conclude that it would not be.

¶ 30. "We review a trial court's conclusion that a sentence it imposed was *not* unduly harsh and unconscionable for an erroneous exercise of discretion." *State v. Giebel,* 198 Wis. 2d 207, 220, 541 N.W.2d 815 (Ct. App. 1995) (emphasis added). Our review of the opposite conclusion must similarly be for an erroneous exercise of discretion. *See Cresci,* 89 Wis. 2d at 504 (concluding that "trial court acted within its discretion" when it modified a sentence from consecutive to concurrent). We will not set aside a discretionary ruling of the trial court if it appears from the record that the court applied the proper legal standards to the facts before it,

and through a process of reasoning, reached a result which a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982).

¶ 31. When a defendant argues that his or her sentence is excessive or unduly harsh, a court may find an erroneous exercise of sentencing discretion "only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). However, "[a] sentence well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *State v. Daniels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983); *see also State v. Scaccio*, 2000 WI App 265, ¶ 18, 240 Wis. 2d 95, 622 N.W.2d 449 ("A sentence well within the limits of the maximum sentence is unlikely to be unduly harsh or unconscionable.").

¶ 32. As the trial court noted, both at sentencing and when denying Grindemann's first sentence modification motion, it could have imposed 110 years of imprisonment for Grindemann's offenses. The forty-four-year sentence it imposed was less than half of the maximum allowable sentence for Grindemann's eleven offenses. Thus, because the sentence imposed was "well within the limits of the maximum sentence," we conclude that it is presumptively *not* unduly harsh or unconscionable. *See id.* We now turn to the record before us to see whether, notwithstanding the fact that

Grindemann's sentence was well within the maximum, there is any basis on which a court might reasonably conclude that the sentence was, nonetheless, unduly harsh or unconscionable.

¶ 33. The court's remarks at sentencing demonstrate that it considered the essential sentencing factors (gravity of the offense, the offender's character, and the public's need for protection). The court denied Grindemann's first sentence modification motion in 1986, less than eight months after imposing sentence, at a time when the facts and circumstances of the case and its considerations at sentencing were presumably still fresh in the court's mind. The court specifically stated in 1986 that it could find no "viable reasons that [it could] cite on the record as to why the sentence should be reduced," and that it had given "this matter a tremendous amount of thought at the time [it] imposed sentence." The court then addressed the "seven reasons or factors" Grindemann advanced in support of his first modification request, and found none meritorious. It concluded by noting that Grindemann had presented "nothing . . . to suggest that the conscience of the public has been shocked by this sentence . . . or the judgment of reasonable people have been violated."

¶ 34. Nothing in the record following the denial of Grindemann's first motion in 1986 diminishes or undermines the court's rationale in refusing to modify Grindemann's sentence.[7] In fact, during proceedings on Grindemann's second motion in 1990, his counsel vir-

---

[7] There is no indication in the record that Grindemann appealed the denial of his first sentence modification motion, which alleged that the original sentence was "unduly harsh and excessive." As we have noted (see footnote 4), we leave open the question of whether, in the absence of a genuine "new factor," a defendant may bring successive motions to modify sentence on

tually conceded that the court had not erroneously exercised its discretion when imposing the original sentence. (See ¶ 11 above.) Grindemann does not argue that the trial court erred in denying either his 1990 or 1994 motions, and we have explained why Grindemann's present assertion that a new factor or a breached plea agreement entitle him to a sentence modification lacks merit. In short, we find no basis in the record before us on which a judge could reasonably conclude that the sentence originally imposed was "unduly harsh or unconscionable," as that standard has been defined and applied by Wisconsin courts. Accordingly, there is no cause for further proceedings in the circuit court.

*By the Court.*—Order reversed.

¶ 35. DYKMAN, J. *(concurring in part; dissenting in part).* A victim of a past sexual assault would probably not expect a trial court to use this traumatic experience as an aggravating factor justifying a harsher sentence for a crime the victim commits years later. But that is what happened here, and the majority finds this result proper. Indeed, the majority goes one step further. When the trial court in this case eventually realized that penalizing a person for being a sexual assault victim was wrong, and reduced the defendant's sentence, the majority finds this to be unreasonable, irrational and illogical, and reinstates the previous sentence.[1]

the grounds that the sentencing court abused its discretion by imposing an unduly harsh or unconscionable sentence. *Cf.* Wis. Stat. § 973.19.

[1] We will sustain a trial court's discretionary act if it logically interprets the facts and uses a rational process to reach

¶ 36. The majority concludes that because Grindemann's sentences were "well within the limits of the maximum permitted sentence," the trial court erred by reducing the sentences. While I agree that the trial court should have held a hearing before entering its order, I disagree with the majority's analysis of the standard by which we review a trial court's finding that its previous sentence was unduly harsh or unconscionable.

a reasonable conclusion. *See State v. Malcom*, 2001 WI App 291, ¶ 12, 249 Wis. 2d 403, 638 N.W.2d 918.

The trial court's order did not explicitly find that its original sentence was unduly harsh or unconscionable. Instead, it noted as follows:

> "A trial Court may modify a sentence even though no new factors are presented. *Jones (Hollis) v State*, 70 Wis.2d 62, 72–73, 233 N.W.2d 441, 447 (1975). The *Jones* Court stated that *State v Wuensch*, 69 Wis.2d 467, 230 N.W.2nd 665 (1975), permits trial courts to review their own sentences to determine whether they are unduly harsh or unconscionable."

(quoting *State v. Ralph*, 156 Wis. 2d 433, 438–39, 456 N.W.2d 657 (Ct. App. 1990)),

> "While the trial court may not revise a sentence merely upon "reflection", *Scott v State*, 64 Wis.2d 54, 59, 218 N.W.2nd 350 (1974), it may review its sentence for abuse of discretion based upon its conclusion that the sentence was unduly harsh or unconscionable. *State v Wuensch*, 69 Wis.2nd 467, 480, 230 N.W.2nd 665 (1975)."

(quoting *Cresci v. State*, 89 Wis. 2d 495, 504, 278 N.W.2d 850 (1979)).

I conclude that the trial court intended to base its order on a finding that its previous sentence was unduly harsh or unconscionable.

¶ 37. The majority interprets two court of appeals cases, *State v. Daniels*, 117 Wis. 2d 9, 22, 343 N.W.2d 411 (Ct. App. 1983), and *State v. Scaccio*, 2000 WI App 265, ¶ 18, 240 Wis. 2d 95, 622 N.W.2d 449, as holding that a sentence "well within the limits of the maximum sentence" cannot be unduly harsh or unconscionable. While one could quibble with that interpretation, I conclude that those cases can be read to support the majority's conclusion.

¶ 38. The problem with doing so, however, is twofold. First, that interpretation reduces the concept of "harsh or unconscionable" to next to nothing. Maximum sentences occur, but rarely. Everything else can be "well within the limits of the maximum sentence." And the test itself is meaningless, and unsupported by common sense. Where is the dividing line between "within the limits of the maximum sentence" and "well within the limits of the maximum sentence?" And why is that a rational distinction to begin with?

¶ 39. The second difficulty with the majority's interpretation is more basic. It contravenes the methodology the supreme court has used when reviewing trial courts' decisions modifying or refusing to modify sentences under the "harsh or unconscionable" test. In *Cresci v. State*, 89 Wis. 2d 495, 499, 278 N.W.2d 850 (1979), the trial court reduced a sentence from consecutive to concurrent because it gave additional consideration to the fact that the defendant was unwilling to lie to the court and had chosen not to testify rather than lie. The supreme court concluded: "Thus, the trial court acted within its discretion when it modified the defendant's sentence from consecutive to concurrent." *Id.* at 504. And, in *State v. Wuensch*, 69 Wis. 2d 467, 480, 230 N.W.2d 665 (1975), the court said:

[W]e perceive no valid reason why a trial court should not be permitted to review a sentence for abuse of discretion based upon its conclusion the sentence was unduly harsh or unconscionable. If the sentence is to be reduced upon these grounds, the trial court must set forth its reasons why it concludes the sentence originally imposed was unduly harsh or unconscionable.

¶ 40. We followed *Wuensch* and *Cresci* in *State v. Ralph*, 156 Wis. 2d 433, 438–39, 456 N.W.2d 657 (Ct. App. 1990). There, we affirmed a trial court's sentence reduction because of sentence disparity. We concluded that this reason adequately supported the trial court's discretionary decision that the original sentence was unduly harsh.

¶ 41. The case in which the court initially concluded that a trial court could modify a previously imposed sentence, *Hayes v. State*, 46 Wis. 2d 93, 106, 175 N.W.2d 625 (1970), *overruled on other grounds, State v. Taylor*, 60 Wis. 2d 506, 210 N.W.2d 873 (1973), involved a trial court's reduction of a defendant's previously imposed sentence. The reason given for the reduction was: "In the instant case the trial judge believed he was in error in imposing a ten-year sentence because he was misinformed at the time of the sentencing as to Hayes' previous criminal record." *Id.* at 106–07. Some of Hayes' prior offenses had occurred when he was a juvenile. *Id.* at 107. The supreme court concluded: "We think there was no abuse in discretion in modifying the sentence." *Id.*

¶ 42. There are a host of cases affirming a trial court's discretionary decision not to modify a previously imposed sentence. *See, e.g., State v. Giebel*, 198 Wis. 2d 207, 220–21, 541 N.W.2d 815 (Ct. App. 1995). In none of these cases did the courts use a methodology similar to the one the majority uses to overturn the trial court's

finding that the sentences it previously imposed on Grindemann were unduly harsh or unconscionable. Instead, the cases concluded that the trial courts' refusals to modify sentences were not an erroneous exercise of discretion. What the majority has done in effect is impose a double standard of review, in which we defer to trial courts' determinations that a sentence is *not* too harsh, but review de novo a conclusion that it *is*.

¶ 43. In *Wuensch*, *Ralph*, and *Hayes*, the courts affirmed the trial court's reductions of sentences even though those sentences were "well within the limits of the maximum permitted sentence," the very factor the majority uses to reverse the trial court's reduction of Grindemann's sentence. The majority opinion becomes the only appellate decision in over thirty years to overturn a trial court's discretionary decision to reduce an unduly harsh or unconscionable sentence.[2]

¶ 44. The majority does not consider *Hayes*, *Ralph* or *Cresci*'s analyses of trial courts' sentence modifications under the "unduly harsh or unconscionable" test. And yet, those are the very cases that provide the basis for the "application of proper legal standards," one of the cornerstones of a proper exercise of discretion. Instead, the majority relies on *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975). The test the majority derives from *Ocanas* is whether "the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public

---

[2] In *State v. Wuensch*, 69 Wis. 2d 467, 480, 230 N.W.2d 665 (1975), the supreme court reversed the trial court's reduction of a sentence because the trial court failed to give reasons for its reduction. Here, the trial court explained that it was reducing Grindemann's sentence because "at the time of sentencing, it thought of the Defendant as being a willing participant in aberrant conduct, rather than a victim of sexual abuse."

sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Id.*

¶ 45. A wrong test usually leads to an incorrect conclusion. That is what has happened here. The court in *Ocanas* outlined the issues:

> (1) Is the twenty-year sentence excessive and an abuse of discretion?
>
> (2) Is the failure to modify his sentence in view of a three-year sentence given to his brother for the same offense and abuse of discretion and a denial of equal protection of the law?

*Ocanas,* 70 Wis. 2d at 181.

¶ 46. The majority's quote from *Ocanas* is, in reality, the test the *Ocanas* court used to address whether the trial court abused its discretion in originally sentencing the defendant. And I agree this is the correct test when considering the validity of an initial sentence. *See State v. Steele,* 2001 WI App 160, ¶ 10, 246 Wis. 2d 744, 632 N.W.2d 112. But it is not the test the *Ocanas* court used to determine whether the trial court abused its discretion by refusing to modify its original sentence. And it is not the test used by *Hayes, Ralph* and *Cresci* to determine whether a trial court erroneously exercised its discretion by modifying a previously imposed sentence.

¶ 47. It is irrelevant that the trial court had previously denied Grindemann's motions to modify his sentence. Of course the trial court denied the motions. At the time it did so, it believed that Grindemann, as a child, had been a "willing participant in aberrant conduct." It was only later that the trial court concluded that Grindemann was not then a sexual deviant, but

658

instead was the victim of another's sexual assaults. The majority cites no authority holding that a trial court may not hear or decide subsequent motions for sentence modification. While a trial court may decline to hear repetitive motions, I know of no rule preventing it from hearing a matter for a second or third time. What the majority is really doing by discussing Grindemann's previous motions is second-guessing the trial court by suggesting that a motion made previously and denied is not credible when made again. While that may often be true, this is a decision to be made by a trial court in the exercise of its discretion. It is not an appellate court's proper function to make that call.

¶ 48. Were I writing for a majority, I would use the "erroneous exercise of discretion" test the supreme court has applied for deciding motions to modify sentences alleged to be unduly harsh or unconscionable. I would not ignore the supreme court's admonition that there is a strong policy against interference with the discretion of a trial court in passing sentence, that an appellate court should not supplant the predilections of a trial judge with its own, and that we are to start with a presumption that the trial court acted reasonably. *State v. Macemon*, 113 Wis. 2d 662, 670, 335 N.W.2d 402 (1983); *see also State v. Mata*, 2001 WI App 184, ¶ 13, 247 Wis. 2d 1, 632 N.W.2d 872. I would conclude that insofar as *Daniels* and *Scaccio* use a different test, we are to resolve differences between court of appeals decisions and supreme court decisions in favor of the supreme court. *State v. Clark*, 179 Wis. 2d 484, 493–94, 507 N.W.2d 172 (Ct. App. 1993).

¶ 49. Were this a majority opinion, I would compare the factors the supreme court and this court have held to be proper factors supporting a trial court's exercise of discretion in modifying a sentence because it

was unduly harsh or unconscionable. In *Hayes*, the sentence modification was based on "misinformation as to previous criminal record;" in *Ralph*, it was "sentence disparity;" and in *Cresci*, it was "defendant unwilling to lie." These were found to be acceptable reasons to modify sentences under the "unduly harsh or unconscionable" test.

¶ 50. Here, the trial court's conclusion that it mistakenly considered Grindemann, at ten years old, a willing participant in aberrant conduct rather than a victim of sexual abuse is no different from the mistakes the trial courts made in *Hayes*, *Ralph*, and *Cresci*. Indeed, a mistake of this nature seems more compelling than the mistakes the trial courts were permitted to remedy in those cases.[3]

¶ 51. I conclude that an analysis of this sort hews closer to the ideal of principled decisionmaking than the use of an analysis not followed by the supreme court, an analysis which itself suggests a near abandonment of the very notion of sentence modification because the original sentence was unduly harsh or unconscionable.

─────────

[3] I also question whether, had Grindemann challenged his original sentence as being an abuse of discretion, we would have sustained it. Although sentencing is discretionary, the use of an improper factor is an erroneous exercise of discretion. *State v. Martin*, 100 Wis. 2d 326, 327, 302 N.W.2d 58 (Ct. App. 1981). In deciding Grindemann's sentence in 1985, the trial court stated that Grindemann had engaged in "sexual deviancy" as a ten year old, and displayed a "history of undesirable behaviors" that included a consensual relationship with another adult male. Had Grindemann complained initially that the trial court had considered both his status as a victim and his consensual relationship with an adult male as aggravating factors, we would have been hard pressed to sustain his sentence. *See* Wis. Stat. § 111.31 (1983–84) (declaring that discrimination on the basis of sexual orientation is against public policy).

¶ 52. An inquiry limited to whether a sentence is "well within the limits of" the maximum permitted by statute may be expedient, but it prohibits trial courts from modifying anything but maximum or near-maximum sentences.

¶ 53. I concur that the trial judge should have heard the State's objections to modifying Grindemann's sentences before it entered its order doing so. I disagree that the trial judge could not modify his sentences. I would therefore remand so that the judge who modified Grindemann's sentences could have a hearing at which both Grindemann and the State could present their views on Grindemann's motion, and then make his decision. Because the majority does not do so, I respectfully concur in part and dissent in part.